Forbis v. Bradbury.

JAMES R. FORBIS, Respondent, v. E. H. BRADBURY *et al.*, Appellants.

### Kansas City Court of Appeals, May 21, 1894.

1. **Municipal Corporations:** CITIES OF THE THIRD CLASS: STREET IMPROVEMENT: JURISDICTION. Section 1498, Revised Statutes, 1889, manifestly means that the city council may by its published resolution propose work on the street, but if a majority of the *bona fide* resident property owners, who are to pay therefor, shall interpose by remonstrance, then the council loses its power to prosecute the work and can not proceed in violation of such protest.

2. ———: ———: ———: ESTOPPEL. Where, notwithstanding the statutory protest, the city council proceeds to contract the proposed work and the remonstrators notify the contractors of the fraud practiced on them, and of the vice in the tax bills to be issued, and of their intention to contest the right to recover thereon, the remonstrators are not estopped as to the contractors to contest such right.

3. ———: ———: MALA FIDES PROPERTY OWNER. Conveyances without consideration and merely colorable made after the filing of the statutory protest against street improvement and for the sole purpose of defeating the remonstrance and after serving such purpose the nominal grantees therein reconvey the property to the real owners are *mala fides,* and such grantees are not resident property owners within the meaning of the statute.

4. ———: ———: REMONSTRATORS AGAINST STREET IMPROVEMENT. The contention in this case is that certain of the protesting owners were not *bona fide* grantees. *Held,* not supported by the evidence; and if certain of said protesting owners had conveyed property to their children prior to the passage of the resolution by the council in order to defeat a former contemplated improvement of the street in question, yet at the time of the passage of the resolution, such grantees were real owners of certain property to be taxed for that improvement and they had, as incident to their ownership, the right to be heard in opposition thereto.

*Appeal from the Jackson Circuit Court.*—HON. JNO. W. HENRY, Judge.

AFFIRMED.

*Flournoy & Flournoy* for appellants.

The deeds made by respondent (Forbis), Ott, Sauerbier, and Hall were and are fraudulent as regards the city and the improvement, and the grantees therein should not be counted as owners. *Stifel v. Brown*, 24 Mo. App. 103; *McGuir v. Smock*, 42 Ind. 1; *McEwin v. Shannon*, 64 Vt. 583; *State v. North Bergin*, 37 N. J. L. 402; *Baird v. Dean*, 48 N. J. Eq. 193; *State v. Burkholder*, 30 W. Va. 593.

*Peak & Ball* and *Yeager & Strother* for respondent.

(1) Evidence of prior abandoned proceedings and of the intentions of grantors in deeds made months before the institution of the proceedings in question, was wholly irrelevant and inadmissible. (2) By "the resident owners," a majority of whom must remonstrate in order to defeat the proceedings, is meant those who are owners resident at the time of the passage of the resolution declaring the improvement necessary. R. S. Mo., 1889, sec. 1498. (3) Manifestly, it was the intention of section 1498 that the council determine the question of ownership by the record; and if, according to the record, a majority of those residents owning at the time of the adoption of the resolution, are found to have remonstrated, the city is at once ousted of jurisdiction to proceed further under that resolution. Those subsequently acquiring title can not be considered. *Jersey City Brewing Co. v. Jersey City*, 42 N. J. L. 575; *Vanderbeck v. Jersey City*, 44 N. J. L. 626.

GILL, J.—Plaintiff brought this suit in equity to set aside certain special tax bills issued by the city authorities of Independence, and thereby relieve his real estate from an apparent cloud on the title. The gist of his complaint is, that the ordinance providing for the street improvement, as well as the contract and tax bills issued thereon, were illegal and void, because said ordinance was passed in the face of a written remonstrance signed by a majority of the resident owners of property fronting on the street improved.

The defendants being the contractors who macadamized the street take issue on this allegation, and assert that the remonstrants did not compose a majority of the resident property owners. On this main issue the trial judge found for the plaintiff, gave judgment as prayed in the petition, and defendants appealed.

Independence is a city of the third class and the section of its charter pertinent to this controversy, reads as follows: "When the council shall deem it necessary to * * * macadamize * * * any street or part thereof within the limits of the city, for which a special tax is to be levied * * * the council shall by resolution, declare such work or improvements necessary to be done, and cause such resolution to be published in the newspaper doing the city printing for two consecutive weeks, and if a majority of the resident owners of the property liable to taxation therefor shall not, within ten days thereafter, file with the clerk of said city their protest against such improvements, then the council shall have power to cause such improvements to be made and to contract therefor and to levy the tax as herein provided * * * ." Sec. 1498, R. S. 1889.

Under authority of this statute the city council of Independence on July 20, 1891, passed a resolution

declaring it necessary to grade and macadamize Blue avenue from Delaware street on the east to the city limits on the west. This resolution was published in the newspaper doing the city printing, and within ten days thereafter, to wit, August 11, this plaintiff and others filed with the city clerk their written protest and remonstrance. At the date this remonstrance was filed it appears that there were, according to the face of the records, thirty-eight resident owners of real estate abutting on that portion of the street proposed to be improved. The remonstrance was signed by twenty-one of this number. So then, as it then appeared, the council was without authority to prosecute the improvement. However, six days after this remonstrance was filed, and in order to overcome this opposing majority and for no other purpose, Lewis and Wilson, two of the resident real estate owners who favored the improvememt, set about to increase the number of resident property owners so as to defeat said remonstrance. To accomplish this, Lewis and Wilson each on August 17, executed and filed in the recorder's office a deed conveying an abutting lot to three grantees, thereby increasing the apparent resident owners by six. This brought the number up to forty-four so that the protesting twenty-one owners were thrown in the minority. The evidence conclusively shows that these transfers by Lewis and Wilson were merely colorable, without consideration, and for the sole purpose of defeating the remonstrance filed by plaintiff and others. And it further appears that after such feigned conveyances had served their purpose the nominal grantees reconveyed the property to the real owners. Notwithstanding all this, there was, on this same August 17, introduced in the city council an ordinance for grading and macadamizing said Blue avenue, and the same was subsequently passed, the council counting and regard-

ing these six grantees from Lewis and Wilson as genuine property owners.

The circuit court held that these alleged grantees of Lewis and Wilson were not such "resident owners of the property liable to taxation" for said improvement as ought to be considered in settling the sufficiency of said remonstrance. And the court thereupon declared the ordinance and tax bills void for the reason that the council had passed the ordinance and directed the improvement, although there was then filed with the city clerk a protest and remonstrance signed by a majority of the *bona fide* resident owners of the property fronting on the street, or portion thereof about to be improved.

In this we think the trial judge was clearly right. The manifest purpose of the law is to permit the majority of the actual resident owners, whose property is to be charged with such street improvements, to control in such matters. The council may by its published resolution *propose* work on the street, but if a majority of the *bona fide* resident owners, who are to pay therefor, shall interpose by remonstrance, then the council can not proceed in violation of such protest. In the presence of such an objection, timely made as the statute provides, the city council loses its power to prosecute the work.

The pretended grantees created by the deeds from Lewis and Wilson were in no just sense *owners* of property to be charged, and the trial court very properly excluded them from the count. To permit such schemes to succeed would be a fraud on the law and the rights of the real owners. It seems, too, without question, that before defendants undertook the work of grading and macadamizing the street, they were informed of the fraud practiced on the protesting owners, and were warned of this vice in the tax bills to

be issued, and that plaintiff would contest the right to recover thereon. The plaintiff, then, is not estopped as to the defendants, since he never acquiesced in or silently consented to the improvement.

But to counteract the foregoing, defendants say, that even to admit that the Lewis and Wilson grantees were fraudulently created and ought not to be counted, and yet the attack on the tax bills must fail, because, they allege, plaintiff and Ott and Sauerbier, three of the protesting owners, themselves made fraudulent deeds to members of their respective families, and for the purpose of defeating the proceedings of July 20. We have carefully read and considered the evidence, and find this charge is not sustained.

It seems that just two months before the city council adopted resolution number 43 providing for the improvement of Blue avenue from Delaware street to the western city limits, the council had inaugurated proceedings to grade and macadamize a portion of Blue avenue along with a portion of Union street, and to that end resolution number 37 was adopted on May 19, 1891. Within a few days after the adoption of this resolution Forbis, Ott and Sauerbier made several deeds to different parties who were members of their respective families. These conveyances are attacked, and it is charged that they were made for the sole purpose of increasing the number of remonstrants and defeating the proposed improvement. As to the Sauerbier deeds it is sufficient to say that there was not a *scintilla* of evidence tending to impeach their good faith. But as to the conveyances from Ott and from Forbis the testimony tends to prove that these parties were induced to make the deeds to their children for the purpose, largely, of securing the defeat of the improvement contemplated by the resolution of May 19. It is only fair to add, however, that other motives

appeared. Mr. Forbis held title to the land, but he seemed to regard. it as equitably and in reality the property of his children.. It descended to them from their mother and was conveyed to the father for mere convenience in selling. So that in view of the proposed tax on it for street improvement he seems to have thought they, as real owners, ought to be heard. Mr. Ott, though intending to aid in defeating the improvement proposed by the resolution of May 19, yet conveyed to his children certain abutting property because of a desire to give the same to them. And so it was subsequently treated; the Ott grantees continued to hold the property as their own, even to his death several months thereafter. There was no reconveyance or anything to show that the deeds he made in May were not intended to lodge a permanent title in his children.

But admitting that Forbis and Ott, in making the deeds in May, intended thereby to defeat the proceeding *of May 19*, and even then does it follow that those grantees should not be heard as to the propriety of *another* and *different* improvement suggested by the resolution of July 20, 1891? The resolution of May 19 declared it necessary to macadamize portions of Blue *and Union* avenue, but this resolution was, on May 26, repealed, and that improvement abandoned. The Forbis and Ott deeds were made with reference to the *abandoned* improvement, and not to that proposed two months thereafter, and which was a substantially different work from that proposed by resolution of May 19. It is sufficient answer to all this to say, that when the proceeding of July 20 was begun the Forbis and Ott grantees were real owners of certain property to be taxed for that improvement, and they had, as incident to that ownership, the right to be heard in opposition thereto. And so they were regarded by the city council; they were counted as genuine objectors; but in

order to overcome the majority then and there existing against the improvement, Lewis and Wilson made the sham conveyances already alluded to.

We hold then, with the trial court, that at the time of the passage of the ordinance directing this work to be done at the expense of certain property owners, there was on file in the office of the city clerk a protest and remonstrance signed by "a majority of the resident owners of the property liable to taxation therefor;" that the existence of such protest deprived the council of all authority to prosecute such improvement; that the ordinance so passed and tax bills thereon issued, were and are null and void.

The judgment, then, will be affirmed. All concur.